UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>D-1 NICOLE BROWN, a.k.a.<br>NIKKI BROWN,<br><br>　　　　Defendant. | CRIMINAL NO. 22-cr-20337-001<br><br>HON. LINDA V. PARKER<br><br>VIOLATION: 18 U.S.C. § 286:<br>False Claims Conspiracy |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America submits this memorandum regarding the sentencing of D-1 Nicole Brown, a.k.a. Nikki Brown now scheduled for February 9, 2023 at 2:00 pm. For the reasons that follow, the government recommends that the Court impose a custodial sentence commensurate with the applicable sentencing guideline range of 30-37 months and order the payment of restitution of $586,362.89, as more fully explained below.

**I.　PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

Brown pleaded guilty on September 28, 2022 to false claims conspiracy in violation of 18 U.S.C. § 286. The charge and plea arose from a scheme which began in about July 2017 and, with respect to Brown's involvement, continued

through July 19, 2019. During that time, Brown conspired with others to defraud the Internal Revenue Service by submitting false Forms 1041 for Estates and Trusts to obtain tax refunds to which they were not entitled. Brown and her co-conspirators obtained the personal identification information of others used in some of the returns under false pretenses, that is, these other individuals thought their PII would be used to obtain money for them legally and were unaware the money was coming from fraudulent tax returns.  Once the IRS processed the fraudulent returns, Brown and her co-conspirators deposited the refund checks into bank accounts under their control. Additionally, both the defendant and co-conspirators filed false tax returns in their names as well. The investigation found that ten Form 1041s received by the IRS were linked to Brown. These returns requested a total of $2,340,734.00 in refunds, with $2,100,065.12 being paid out by the IRS through six checks. Four of those checks were deposited into accounts opened by Brown and the other two into accounts opened by an individual known as JP.  Brown did not keep most of the money obtained in the scheme.  Some was returned to the IRS and some was passed on to her co-conspirators.  Brown benefitted from the scheme by living in an apartment, driving a vehicle, and taking vacations, all funded by proceeds of the scheme.

## II. SENTENCING GUIDELINE CALCULATIONS AND § 3553(a) FACTORS

In determining an appropriate sentence, district courts are to consider the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Booker*, 543 U.S. 220, 264 (2005). "The Guidelines should be the starting point and the initial benchmark in determining a sentence and a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007) (quoting *Gall v. United States*, 128 S.Ct. 586, 601 (2007) (internal quotations omitted)). "Sentences falling within the applicable Guidelines range are afforded a rebuttable presumption of reasonableness." *Id.* at 770.

In determining the appropriate sentence, the Court should not simply rely on the guidelines calculations, but should consider all of the factors in the Sentencing Reform Act and, in particular, those set forth in 18 U.S.C. § 3553(a). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to

provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty; and (7) the need to provide restitution to any victims of the offense.

### A. Sentencing Guidelines

#### 1. Guidelines Calculation

The parties and the probation department agree that the applicable sentencing guideline range is 30-37 months, based on an offense level of 15 and a criminal history category of III. (PSR at ¶ 48). The government asks the Court to adopt this range when sentencing the defendant.

### B. Sentencing Reform Act Factors

#### 1. The Seriousness of the Offense

The Presentence Report contains a great deal of information concerning this offense that need not be reiterated here. Clearly, the offense was serious, resulting in the theft of over $2 million from the federal treasury, and involving the use of PII of others in ways they did not authorize.

#### 2. Background and Character of the Defendant

The defendant's background is extensively set forth in the Presentence

Report and will not be reiterated here.

### 3. Respect for the Law and Deterrence

In white-collar prosecutions, the sentence imposed is important to promote respect for the law and to deter the defendant and general public from committing similar crimes in the future. Given the difficulties of uncovering and prosecuting this type of fraud, the deterrent impact of prison sentences is important to the mission of law enforcement and the financial integrity of banks and financial institutions. The Eleventh Circuit emphasized the important role that prison sentences have in deterring white-collar crime in *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) when it recognized that "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." (internal quotation marks and alterations omitted). Although the government does not believe that a prison sentence is necessary to deter this defendant from personally committing additional offenses, the Court should consider general deterrence in imposing sentence.

Moreover, "[o]ne of the central reasons for creating the sentencing guidelines was to ensure stiffer penalties for white-collar crimes and to eliminate disparities between white-collar sentences and sentences for other crimes." *United*

*States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008) (citations omitted). A guideline sentence would help effectuate that purpose here.

### 4. Need to Avoid Unwarranted Sentence Disparities

While the sentencing guidelines are advisory, they remain the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. Accordingly, the Supreme Court has held that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process" in order to assure fair, proportionate, and uniform sentencing of criminal offenders. *Gall,* 552 U.S. at 50 n.6. The government is confident that this Court will do so.

### III. RESTITUTION AND THE VOLUNTARY RETURN OF FUNDS.

As noted above, from July 2017 to July 2019, the I.R.S. paid out a total of $2,100,065.12 based on the ten fraudulent returns associated with Brown. However, in January 2022, after Brown had been charged, she voluntarily contacted the case agents to advise that, shortly after Christmas 2021, co-

defendant Sameerah Marrell contacted her and told her that there was still $1.5 million remaining in a Bank of America account they shared, and that Marrell had a form that Brown needed to fill out and send to the bank, along with a copy of her identification, so that they could get the funds out. Marrell told her that Brown was "already on the hook" for the funds, so they may as well get them out of the account. When Brown balked, Marrell suggested that Brown tell her attorney about the money and have the funds taken back "to help lower her guidelines."[1] (IRS/CIS Memorandum of Interview, January 26, 2022). That was exactly what she did. The IRS/CIS was thereafter able to seize, from the Bank of America [BOA] account Brown identified, some $1,513,702.23.[2] Thus, for restitution purposes, the Court should order Brown to pay $586,362.89 to the IRS ($2,100,065.12 minus $1,513,702.23).

---

[1] Marrell was understandably unaware of USSG § 2B.1.1, Application Note 3(E)(i), which provides, in pertinent part: "Loss shall be reduced by the following: (i) The money returned. . .by the defendant. . .to the victim *before the offense was detected*. . ." (emphasis added).

[2] Coincidentally, shortly after Brown provided this information, and before the IRS/CIS had a chance to act on it, Bank of America notified the State of Michigan which, in turn, alerted IRS/CIS to the existence and location of these funds. Thus, IRS/CIS would have discovered them without Brown's assistance. Nonetheless, Brown deserves credit for notifying authorities promptly upon her discovery that there were still funds available rather than attempting to withdraw them for her own use.

## CONCLUSION

For all of these reasons, the government respectfully recommends that the Court impose a sentence of imprisonment within the guideline range of 24-30 months and order the payment of restitution of $586,362.89.

    Respectfully submitted,

    DAWN N. ISON
    United States Attorney

    s/Craig A. Weier
    CRAIG A. WEIER (P33261)
    Assistant United States Attorney
    211 W. Fort St., Suite 2001
    Detroit, Michigan  48226
    Telephone:  (313) 226-9678
    E-mail: craig.weier@usdoj.gov

Dated: January 26, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>v.<br><br>D-1 NICOLE BROWN, a.k.a.<br>NIKKI BROWN,<br><br>              Defendant. | CRIMINAL NO. 22-cr-20337-001<br><br>HON. LINDA V. PARKER<br><br>VIOLATION: 18 U.S.C. § 286:<br>False Claims Conspiracy |

## CERTIFICATE OF SERVICE

      I hereby certify that on January 26, 2023, I filed the foregoing document through ECF which electronically notified and provided an electronic copy to counsel of record, Sanford A. Schulman.

                                            /s Craig A. Weier
                                            Craig A. Weier (P33261)
                                            Assistant United States Attorney
                                            211 West Fort Street, Suite 2001
                                            Detroit, Michigan 48226-3211
                                            (313) 226-9678